LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――

STEPHANIA RUIZ GUEVARA and
SANDRA HERAS, *on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

|                         |
|-------------------------|
| Plaintiffs,             |

v.

FINE & RARE OPERATIONS LLC
      d/b/a FINE & RARE,
FLATIRON ROOM OPERATIONS LLC
      d/b/a THE FLATIRON ROOM,
GOODNIGHT GROUP LLC, and
THOMAS TARDIE

        Defendants.

―――――――――――――――――――――――――

Case No.: 1:20-cv-05330

**FIRST AMENDED CLASS**
**AND COLLECTIVE ACTION**
**COMPLAINT**

Jury Trial Demanded

     Plaintiffs STEPHANIA RUIZ GUEVARA and SANDRA HERAS (herein, "Plaintiffs"),

on behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby files this First Amended Class and Collective Action Complaint against Defendants, FINE &

RARE OPERATIONS LLC d/b/a FINE & RARE, FLATIRON ROOM OPERATIONS LLC d/b/a

THE FLATIRON ROOM, and GOODNIGHT GROUP LLC ("Corporate Defendants") and

THOMAS TARDIE ("Individual Defendant," and together with Corporate Defendants,

"Defendants"), and states as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to invalid meal credit deductions, (2) unpaid wages due to time-shaving, (3) liquidated damages and (4) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to an invalid tip credit, (2) unpaid wages due to invalid meal credit deductions, (3) unpaid wages due to time-shaving, (4) unpaid spread-of-hours premium, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.    Plaintiff STEPHANIA RUIZ GUEVARA is a resident of Queens County, New York.

6.    Plaintiff SANDRA HERAS is a resident of Queens County, New York.

7.    Corporate Defendant, GOODNIGHT GROUP LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and principal executive office at Goodnight Group LLC, 299 Broadway, Suite 1120, New York, NY 10007.

8.      Corporate Defendant, FINE & RARE OPERATIONS LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at C/O GABAY-RAFIY & BOWLER LLP 291 BROADWAY, SUITE 1901 NEW YORK, NEW YORK, 10007, and a principal place of business at 9 E 37th St New York, NY 10016.

9.      Corporate Defendant, FLATIRON ROOM OPERATIONS LLC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and principal executive office at Flatiron Room Operations LLC, 299 Broadway, Suite 1120, New York, NY 10007, which is identical to the address of GOODNIGHT GROUP LLC.

10.      Individual Defendant, THOMAS TARDIE, is the Chief Executive Officer and owner of Corporate Defendants. THOMAS TARDIE exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. THOMAS TARDIE had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to THOMAS TARDIE regarding any of the terms of their employment, and THOMAS TARDIE would have the authority to effect any changes to the quality and terms of their employment. THOMAS TARDIE ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. THOMAS TARDIE had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

11.     At all relevant times, Corporate Defendants, FINE & RARE OPERATIONS LLC, GOODNIGHT GROUP LLC, and FLATIRON ROOM OPERATIONS LLC, each was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

12.     Defendants THOMAS TARDIE and GOODNIGHT GROUP LLC, operate or operated two (2) bar restaurants under the following trade names and locations:

a.   "Fine & Rare" – 9 East 37th Street, Ground Floor, New York, NY 10016; and

b.   "The Flatiron Room" – 37 West 26th Street, Ground Floor, New York, NY 10010.

(collectively the "Restaurants").

13.     Corporate Defendants, GOODNIGHT GROUP LLC, FINE & RARE OPERATIONS LLC, and FLATIRON ROOM OPERATIONS LLC, operate or operated the Restaurants as a single integrated enterprise, under the control of their owner, Individual Defendant THOMAS TARDIE. Individual Defendant, THOMAS TARDIE, owns and operates each Corporate Defendant. Specifically, Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

a.   All the Restaurants have been owned and operated by Individual Defendant, THOMAS TARDIE, for over nine (9) years.

b.   Individual Defendant, THOMAS TARDIE, is listed as the principal on both Restaurants NYC Liquor License. *See* **Exhibit A.**

c.   FINE & RARE OPERATIONS LLC, and FLATIRON ROOM OPERATIONS LLC are a part of the GOODNIGHT GROUP LLC hospitality organization. *See* **Exhibit B**.

4

d.  All the Restaurants share a common look and feel that have a common theme of fine food, premium liquor and live entertainment under the direction of Individual Defendant, THOMAS TARDIE.

e.  All the Restaurants use a central marketing department the Restaurants receive legal advice from the General Counsel of the Restaurants' corporate headquarters, who oversees legal compliance for all the Restaurants.

f.  Prior to opening, all new Restaurants must be approved by Individual Defendant, THOMAS TARDIE.

g.  Both Restaurants are jointly advertised on the GOODNIGHT GROUP LLC's website. *See* **Exhibit C.**

h.  Each Restaurants' website has a link to the other Restaurants website and to the GOODNIGHT GROUP LLC's website. *See* **Exhibit D**.

i.  Both Restaurants have gift cards for sale on the GOODNIGHT GROUP LLC's website. *See* **Exhibit E**.

j.  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at the other Restaurant location different from their primary place of employment whenever one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs.

k.  Employees were regularly required to transport items from and to the Restaurants, in accordance with the directives of central management, including the Individual Defendant, THOMAS TARDIE.

14.     Although Plaintiffs did not work at all of Defendants' Restaurants, **all** of the Restaurants are appropriately named in this First Amended Complaint through the relevant Corporate Defendants described above. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiffs seeks to represent.

15.     Plaintiffs has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

16.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

### FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiffs brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages for all hours worked, including overtime hours after forty (40), and due to an invalid meal credit. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20.     Plaintiffs brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees (including but not limited to delivery persons, waiters, servers, hosts, bartenders, barbacks, bouncers, porters, runners, busboys, food preparers, cooks, and dishwashers), employed by Defendants at the Restaurant on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

22.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more

than forty (40) members of the Class.

23.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay the proper wages due to an invalid meal credit, (ii) failing to pay spread-of-hours premium, (iii) failing to provide Class members with proper wage statements with every payment of wages, and (iv) failing to properly provide wage notices to Class members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

24.     With regard to Plaintiffs and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

25.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have

no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the NYLL. Current

employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work;

d)  Whether Defendant properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e)  Whether Defendants properly compensated Plaintiffs and Class members the proper minimum wage under the NYLL;

f)  Whether Defendants properly compensated Plaintiffs and Class members the proper overtime compensation under the NYLL;

g)  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

j) Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

k) Whether Defendants properly compensated Plaintiffs and Class members the spread-of-hours premium under the NYLL;

l) Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL;

m) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

n) Whether Defendants provided proper wage statements for each pay period to Plaintiffs and Class members, and whether those wage statements properly stated Plaintiffs' and Class members' wage and overtime compensation in accordance with the NYLL.

## **STATEMENT OF FACTS**

30. Plaintiff STEPHANIA RUIZ GUEVARA

a. In or around November 2019, Plaintiff STEPHANIA RUIZ GUEVARA was hired by Defendants to work as a busser for Defendants' Fine & Rare restaurant,

located at 9 East 37th Street, Ground Floor, New York, NY 10016. Plaintiff's employment was terminated in or around February 2020 by General Manager David ["Last Name Unknown"].

b.   Throughout Plaintiff GUEVARA's employment, her schedule was varied and changed on a week-to-week basis.

c.   From the start of her employment to December 15, 2019, Plaintiff GUEVARA was scheduled to work anywhere from ten (10) hours per week to twenty-five (25) hours per week.

d.   From December 16, 2019 to December 31, 2019, due to the holiday crowd, Plaintiff was scheduled to work from thirty-three (33) to thirty-six (36) hours per week.

e.   From January 1, 2020, to the end of her employment, Plaintiff was scheduled to work from sixteen (16) to thirty (30) hours per week.

f.   Throughout her employment, Plaintiff GUEVARA was paid at the tip credit minimum wage of ten ($10) dollars per hour.

g.   Throughout her employment, Defendants improperly deducted a meal credit from Plaintiff GUEVARA's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1] , whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[2], and whether employees actually consumed the credited meals or not.

---

[1] 29 C.F.R. § 531.3
[2] NYCRR § 146-3.7

31.     Plaintiff SANDRA HERAS

a.   In or around June 2017, Plaintiff HERAS was hired by Defendants to work as a server/food runner for Defendants' Fine & Rare restaurant, located at 9 East 37th Street, Ground Floor, New York, NY 10016. Plaintiff HERAS' employment was terminated in August 2019.

b.   Throughout her employment, Plaintiff HERAS was scheduled to work Tuesdays to Saturdays, from 5:00 p.m. to 11:00 p.m., for a total of thirty (30) hours per workweek.

c.   Throughout her employment, Plaintiff HERAS was paid at the tip credit minimum wage of ten ($10) dollars per hour.

d.   Throughout Plaintiff HERAS' employment, she had to work through her meal break. As a result, Plaintiff HERAS was deprived of two and a half (2.5) hours of work each week due to Defendants policy of time shaving.

e.   Approximately two (2) times per month, Plaintiff HERAS was required to work a double shift, from 11:00 a.m. to 11:00 p.m. On the days she worked these double shifts, Defendants failed to provide Plaintiff HERAS her spread of hours compensation.

f.   Throughout her employment, Defendants improperly deducted a meal credit from Plaintiff HERAS' wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[3] , whether the meals provided satisfied New York State's

---

[3] 29 C.F.R. § 531.3

nutritional requirements containing all four (4) food groups[4], and whether employees actually consumed the credited meals or not.

32.     Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants (i) failed to properly provide tip credit notice at hiring and with every change in rate of pay thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

33.     Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including preparing food, making coffee, polishing silverware and glassware, restocking the bathrooms, restocking condiments and the bar, folding napkins and taking out all the garbage in the premises. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees.

34.     Throughout Plaintiffs' employment, Defendants also improperly deducted a meal credit from employees' wages under FLSA § 203(m) and NYCRR § 146-1.9, for each shift they

---

[4] NYCRR § 146-3.7

worked, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[5] , whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[6], and whether employees actually consumed the credited meals or not. Similarly, FLSA Collective Plaintiffs and Class members had a meal credit deducted from their wages regardless of whether the meal credit deductions were reasonable, whether the meals satisfied the New York State's nutritional requirements, and whether employees they actually consumed the credited meals or not.

35.     Plaintiffs and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to an invalid tip credit, unpaid spread-of-hours premiums, and invalid meal credit deductions for each payment period. In other words, Plaintiffs and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

36.     Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and at dates of all wage changes thereafter. Defendants' Wage Notice failed to list when the notice was provided, what allowances were to be taken, what the Plaintiffs' primary language was, and what Plaintiffs' rates of pay (regular and overtime) for each type of work or shift in the requisite areas. Plaintiffs did not receive proper wage notices either upon being hired or upon wage changes since the date of hiring in violation of the NYLL.

37.     Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime

---

[5] 29 C.F.R. § 531.3
[6] NYCRR § 146-3.7

rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Tipped Subclass members. Defendants were not entitled to claim any tip credits under the NYLL.

38.   Defendants knowingly and willfully operated their business with a policy of improperly deducting meal credits from Plaintiffs, FLSA Collective Plaintiffs and the Class members, in violation of the FLSA and the NYLL.

39.   Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiffs and Class members, in violation of the NYLL.

40.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

41.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

42.   Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

43.   Plaintiffs reallege and reaver Paragraphs 1 through 42 of this First Amended Class and Collective Action Complaint as if fully set forth herein.

44.   At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

45.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

46.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

47.     At all relevant times, Defendants had a policy and practice of time-shaving resulting in a failure to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked.

48.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half, including overtime wages owed due to Defendants' time-shaving policy.

49.     At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiffs and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiffs and FLSA Collective Plaintiffs consumed the meals in question.

50.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

51.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

52.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

53.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

54.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

55.     Plaintiffs reallege and reaver Paragraphs 1 through 54 of this First Amended Class and Collective Action Complaint as if fully set forth herein.

56.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

57.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them their proper wages, including overtime, for all hours worked due to Defendants policy of time-shaving.

58.     Defendants willfully violated Plaintiffs' and Tipped Subclass members' rights by failing to pay them proper wages, including overtime, in the lawful amount for all hours worked due to Defendants' invalid tip credit deduction.

59.     Plaintiffs and Class members regularly worked days that exceeded ten (10) hours per workday. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay

spread-of-hours premium to Plaintiffs and Class members for each workday that exceeded ten (10) hours in length.

60.     Defendants willfully violated Plaintiffs' and Class members' rights by improperly deducting meal credits from Plaintiffs and Class members regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiffs and Class members consumed the meals in question.

61.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because Defendants failed to claim a tip credit for each payment period.

62.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees with proper wage notices, at date of hiring and at the dates of all changes in wage rates thereafter, as required under the NYLL.

63.     Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid wages including overtime due to an invalid tip credit, unpaid wages due to time-shaving, unpaid spread-of-hours premium, unpaid wages due to invalid meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages and unpaid overtime compensation, including those due to Defendants' invalid tip credit policy under the FLSA and the NYLL;

d. An award of unpaid wages and unpaid overtime compensation, including those due to Defendants' improper time-shaving policy under the FLSA and the NYLL;

e. An award of unpaid spread-of-hours premium due under the NYLL;

f. An award of unpaid wages due to Defendants' invalid meal credit deduction under the FLSA and the NYLL;

g. An award of statutory penalties as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage and overtime compensation, pursuant to 29 U.S.C. § 216;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage, overtime compensation and spread-of-hours premium pursuant to the NYLL;

j. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.   Designation of Plaintiffs as a Representative of the FLSA Collective Plaintiffs;

l.   Designation of this action as a Class Action pursuant to FRCP 23;

m.  Designation of Plaintiffs as a Representatives of Class; and

n.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 7, 2021                                Respectfully submitted,

By:   */s/ C.K. Lee*
          C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*