UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIA RUIZ GUEVARA and
SANDRA HERAS, on behalf of themselves, FLSA
Collective Plaintiffs and the Class,

                Plaintiffs,

      v.

FINE & RARE OPERATIONS LLC
d/b/a FINE & RARE,
FLATIRON ROOM OPERATIONS LLC
d/b/a THE FLATIRON ROOM,
GOODNIGHT GROUP LLC, and
THOMAS TARDIE,

                Defendants.

**Case No.** 1:20-cv-05330-MKV-BCM

Class/Collective Action

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Dated:        September 14, 2021

Gabay & Bowler
Sari Gabay, Esq.
Anne Marie Bowler, Esq.
48 West 21st Street
Suite 1000
New York, NY 10010
(212) 941-5025
gabay@gabaybowler.com
bowler@gabaybowler.com
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………….……………………………ii, iii, iv

<u>PRELIMINARY STATEMENT</u>…………………………………………………..…1

<u>ARGUMENT</u>………………………………………………………………...………3

    **I.**    <u>Requirements for Conditional Certification of a Collective Action Under the</u>
    <u>Federal Labor Standards Act</u>……………………………………………...…..3

    **II.**    <u>Plaintiffs Did Not Submit Sufficient Evidence of a Factual Nexus Which Binds</u>
    <u>Plaintiffs To Potential Members of the Collective; Plaintiffs Cannot Show That</u>
    <u>Potential Collective Members Were Victims of a Common Policy or Plan That</u>
    <u>Violated the Law.</u> ……………………………………………………………6

        **A. Plaintiffs' Declarations are Self-Serving and Insufficient to Provide the**
        **Necessary Factual Nexus.** ……………………………………………….9

        **B. There is No Evidence That Plaintiffs Were Victims of a Common Policy or**
        **Scheme Relating to the Meal Credit.** …………………………………11

        **C. There is No Evidence That Plaintiffs Were Victims of a Common Policy or**
        **Scheme Relating to Defendants' Overtime Policies**…………………………12

    **III.**    <u>The Court Should Deny Plaintiffs' Request For Information For Individuals</u>
    <u>With A Cause Of Action Dating Back to July 10, 2014, Because Their Claims</u>
    <u>Are Outside The Statute Of Limitations And They Cannot Join The</u>
    <u>Collective</u>………………………………………………………………13

    **IV.**    <u>Equitable Tolling of the Statute of Limitations Is Not Appropriate In This</u>
    <u>Case</u>………………………………………………………….……………13

    **V.**    <u>Plaintiffs' Proposed Notice of Pendency is Improper</u>……………………14

<u>CONCLUSION</u>………………………………………………………...…….....17

TABLE OF AUTHORITIES

**<u>CASES</u>**

*Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691, (D. Conn. Mar. 31, 2012) …………………………………………………………………………...…...4, 5

*Arevalo v. D.J.'s Underground, Inc.*, No. DKC 09-3199, 2010 WL 4026112, (D. Md. Oct. 13, 2010) ...……………………………………………………………………...……16

*Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS), 2005 WL 309870, (S.D.N.Y. Nov. 18, 2005) …………………………………………………………………………5

*Campbell v. PriceWaterhouse Coopers*, LLP, No. S-06-2376, 2008 WL 2345035, (E.D. Cal. June 5, 2008) …………………………………………………………………………16

*Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985).….14, 15

*Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) …...………………14

*Flores v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 11378, (S.D.N.Y. Mar. 16, 2006) …...2, 3

*Gordon v. Kaleida Health*, Civ. No. 08-cv-378S, 2009 WL 3334784, (W.D.N.Y. Oct. 14, 2009) …………………………………………………………….……………...16

*Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010) ……..……..…8, 15

*Hintergerger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 WL 3464134, (W.D.N.Y. Oct. 21, 2009) …………………………………………………………….……………16

*Hoffman v. Sbarro*, 982 F.Supp. 249 (S.D.N.Y. 1997) …………………………………………13

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ...………………………………4, 5

*Holland v. Florida*, 560 U.S. 631 (2010) …………………………………………………14

*Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231 (M.D. Ala. 2003) …………………..6

*Jason v. Falcon Data Com, Inc.*, 2011 U.S. Dist. LEXIS 77352, (E.D.N.Y. July 18, 2011) ……....9

*Johnson v. Nyack Hosp.*, 86 F.3d 8 (2d Cir. 1996) …………………………………………...…13

*Khalil v. Original Homestead Rest., Inc.*, 2007 U.S. Dist. LEXIS 70372, (S.D.N.Y. Aug. 9, 2007) …………………………………………………………………………………..9

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, 2012 U.S. Dist. LEXIS 76660, (S.D.N.Y. June 1, 2012) …………………………………………………………………..9

*Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428, (S.D.N.Y. Nov. 6, 2003) ………………………………………………………………………………...…5

*Lijun Geng v. Shu Han Ju Rest. II Corp.*, 2019 U.S. Dist. LEXIS 154246, (S.D.N.Y. Sept. 6, 2019) ………………………………………………………………………………...…7

*Lixin Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, (S.D.N.Y. May 7, 2001) …………...9

*Lujan v. Cabana Management, Inc.*, 2011 WL 317984, (E.D.N.Y. Feb. 1, 2011) ……………...15

*Mata v. Foodbridge LLC*, No. 14 CIV. 8754 ER, 2015 U.S. Dist. LEXIS 70550, 2015 WL 3457293, (S.D.N.Y. June 1, 2015) …………………………………………………………………..7

*Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216 (D. Conn. 2003). …………………………...…5

*Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154, (S.D.N.Y. Feb. 2, 2006) …..5

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d. Cir. 2010) …………………………………….…….3, 4, 6

*Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606 (D. Conn. 2007)………………3, 4, 5

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005)………...……………………………………………14

*Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, (S.D.N.Y. Jan. 3, 2012) …………………………………………………………………………………..4

*Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, (E.D.N.Y. June 12, 2006) …………………………………………………………………………………...5

*Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 SJ MDG, 2014 U.S. Dist. LEXIS 53813,

(E.D.N.Y. Apr. 17, 2014) …………………………………………………………….....8

*Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, (S.D.N.Y. Jan. 27,

2014) …………………………………………………………………………………...4

*Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, (S.D.N.Y. Apr. 24, 2006) ………...9

*Slamna v. API Rest. Corp.*, No. 12 Civ. 757, 2013 WL 3340290, (S.D.N.Y. July 2, 2013) …....15

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011) …..…………15

## <u>STATUTES</u>

29 U.S.C. § 216(b) ……………………………………………………………………..3, 4, 6

29 U.S.C. § 255(a) ……………………………………………………………………..13

## PRELIMINARY STATEMENT

Defendants FINE & RARE OPERATIONS LLC d/b/a FINE & RARE, FLATIRON
ROOM OPERATIONS LLC d/b/a THE FLATIRON ROOM, GOODNIGHT GROUP LLC, and
THOMAS TARDIE (collectively, "Defendants"), submit this memorandum of law in opposition to
Plaintiffs Stephania Ruiz Guevara's ("Plaintiff Guevara") and Sandra Heras' ("Plaintiff Heras" and
together, "Plaintiffs") motion for conditional certification under the Fair Labor Standards Act
("FLSA").  Based upon nothing but Plaintiffs' own anecdotal and hearsay allegations, Plaintiffs
seek conditional certification of a collective that comprises all current and former "non-exempt
employees" who worked for Defendants.  This broad category consists of both tipped and non-
tipped employees.  While Plaintiffs' burden on conditional certification may be low for preliminary
conditional collective certification, this burden is not non-existent, and certification is not automatic.
Rather, the low burden of requiring Plaintiffs to make at least a modest actual evidentiary showing
that there are other employees "similarly situated" serves as an important guard against wasteful,
inefficient, and unjust litigation.  Plaintiffs' offering here, falls woefully short to meet even the
modest evidentiary showing sufficient to meet its burden.

Additionally, the all-encompassing collective, including all "non-exempt employees"
(including but not limited to "delivery persons, waiters, bartenders, barbacks, runners, bussers,
cooks, food preparers, dishwashers, porters or hosts") proposed by Plaintiffs (*see* Memorandum of
Law in Support of Plaintiffs' Motion for Conditional Collective Certification ("Plaintiffs' MOL") at
p. 11) is overbroad and relies on irrelevant boilerplate language, inapplicable here.  For instance,
Defendant Goodnight Group LLC does not even employ delivery persons; and, cooks, dishwashers,
porters, and hosts *are not paid with a tip credit.  See* Declaration of Dasha Naymon, sworn to
September 14, 2021 ("Naymon Dec."), attached to the Affirmation of Sari Gabay, dated
September 14, 2021, as Exhibit 1, ¶¶ 17-19, 21. "In a situation such as this, where the named

1

plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Flores v. Osaka Health Spa, Inc.*, 2006 U.S. Dist. LEXIS 11378, at *7 (S.D.N.Y. Mar. 16, 2006).

With respect to the tipped employees – servers, bartenders, barbacks, runners and bussers – the procedure for calculating the tip portion of their wages differs by category of employee. Naymon Dec. ¶¶ 12-13. While runners, bussers and barbacks received the same percentage of the daily tip pool, servers and bartenders received *an entirely different percentage*. *Id.* at ¶ 13. This alone refutes Plaintiffs' allegation that these categories of employees are similarly situated.

Plaintiff Guevara was a busser and Plaintiff Heras was a food runner.[1] With respect to the runners and bussers (as well as the barbacks), each employee's collection of tips depended entirely on their schedule, and Plaintiffs' motion is completely silent as to the effects of scheduling on the employees' tips. For example, if a busser works on a Monday when the restaurant is slow, the tip pool will be lower. *Id.* at ¶ 14. It follows that if a barback works on a Friday night when the restaurant is busy, the tip pool will be higher. *Id.* The same logic applies to the slow season versus the busy season, as well as to regular weekends versus holiday weekends. *Id.* Additionally, Plaintiff Heras was employed from June 2017 to August 2019. Plaintiff Guevara was employed from the November 2019 to February 2020. *These employees did not even overlap* and Plaintiffs' motion fails to consider changes in volume of business

---

[1] In clarification of her assertion in paragraph 1 of the Declaration of Sandra Heras [ECF Doc. No. 64], Plaintiff Heras worked as a server *only at private events*, when tip credit does not apply, and all working staff is paid a fixed amount. *See* Naymon Dec. ¶ 29. At all other times, Heras was employed as a food runner and her tip credit was calculated like the bussers and barbacks. *Id.* At no time during her employment was Plaintiff Heras paid wages in a way similar to any of the servers. *Id.*

during those years. In any event, given that they worked in different time periods, damages calculations, if any, will be unique for each of the two Plaintiffs should this Court certify the collective.  The purpose of the collective action is not served by certifying a class with so much variety as here.

Moreover, both Plaintiffs worked exclusively at Fine & Rare. Naymon Dec. ¶ 29.  The calculation of tips for runners, bussers and barbacks at The Flatiron Room was controlled by a different manager than that of those employees at Fine & Rare.  *Id.* at ¶¶ 8-9.  Plaintiffs were not employed by the Goodnight Group and admittedly, neither worked for The Flatiron Room.  In reality, each worked at different times and in different positions (one worked as a busser from November 2019 to February 2020; and the other worked as a runner from June 2017 to August 2019).  Accordingly, Plaintiffs have failed to establish any factual nexus whatsoever between themselves and any employee outside of the other runners, bussers and barbacks at Fine & Rare, only.  Even with respect to those employees, Plaintiffs have failed to proffer the requisite factual support to meet even the low burden necessary for conditional certification under the FLSA

## **ARGUMENT**

### I.  **Requirements for Conditional Certification of a Collective Action Under the Federal Labor Standards Act**

The Fair Labor Standards Act ("FLSA") provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Collective actions under the FLSA require potential class members to opt into the case.  *See id.*; *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606, 618 (D. Conn. 2007).  The District Court has discretion to certify a collective under § 216(b).  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d. Cir. 2010).  For a collective action

under 29 U.S.C. § 216(b) to be certified and proceed to trial, employees bringing the action must demonstrate that they are similarly situated to potential collective members.  29 U.S.C. § 216(b).  The FLSA, however, does not define "similarly situated," nor does it prescribe a method for certifying a collective action.  *See id.*  The Second Circuit utilizes a two-stage process to determine whether plaintiffs and potential opt-ins are similarly situated and may therefor proceed to trial as a collective.  *Myers*, 624 F.3d at 554-555; *Neary*, 517 F.Supp.2d at 618.

At the first stage, commonly referred to as "conditional certification", the court determines whether notice of the action should be issued to potential opt-in plaintiffs and whether the action should proceed initially as a collective action.  *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Neary*, 517 F.Supp.2d at 618.  Before facilitation of notice, plaintiffs must make a modest factual showing demonstrating that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.  *Myers*, 624 F.3d at 555; *Neary*, 517 F.Supp.2d at 618.  "To meet this standard, plaintiffs must proffer 'substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."  *Pippins v. KPMG LLP*, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012).  Plaintiffs can generally satisfy this burden by showing that there are other employees who are similarly situated with respect to their job requirements and pay provisions.  *Myers*, 624 F.3d at 555.

Plaintiffs cannot, however, rely on unsupported assertions, *see id.*, or conclusory allegations.  *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *3 (S.D.N.Y. Jan. 27, 2014).  Rather, there must be some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a common policy or scheme.  *Alli v. Boston Market Co.*, Civil No. 3:10-cv04 (JCH), 2011 WL 4006691, at *1-2 (D.

4

Conn. Mar. 31, 2012).  Indeed, courts typically deny collective certification where, as here, plaintiffs are unable to prove, beyond their own conclusive assertions, that they are similarly situated with potential class members.  *See, e.g., Levinson v. Primedia Inc.*, No. 02-CV-222 (CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (denying plaintiff's request for notice to potential class members where plaintiff failed to support their allegations of a company-wide policy with a factual showing that extended beyond his own circumstances); *Prizmic v. Armour*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (stating that "actual evidence of a factual nexus between [plaintiff's] situation and those they claim are similarly situated, rather than mere conclusory allegations" are required); *Morales v. Plantworks, Inc.*, 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying motion for conditional class certification where motion was based on conclusory allegations and plaintiffs offered nothing of evidentiary value); *Barfield v. N.Y.C. Health and Hospitals Corp.*, 05-CV-6319 (JRS), 2005 WL 309870, at *4 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collection action certification where plaintiff did not present sufficient evidence that she and potential plaintiffs together were victims of a common policy or plan that violated the law).

A motion for conditional certification, in essence, asks the Court to open an action to other parties.  In authorizing notice in *Hoffman-LaRoche*, the Supreme Court pointed to the systemic benefits derived from a process that permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffman-LaRoche*, 493 U.S. at 170.  "In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits of the case." *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D. Conn. 2003).

Not only must diverse members of the proposed collective action present common questions, those common questions must have common answers that will be resolved through the representative.  Collective action is not proper if every opt-in plaintiff must testify regarding his or her job duties.  Absent the requisite commonality, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse."  *Horne v. United Services Auto Ass'n*, 279 F.Supp.2d 1231, 1234 (M.D. Ala. 2003).

## II. Plaintiffs Did Not Submit Sufficient Evidence of a Factual Nexus Which Binds Plaintiffs To Potential Members of the Collective; Plaintiffs Cannot Show That Potential Collective Members Were Victims of a Common Policy or Plan That Violated the Law

Plaintiffs seek to represent a collective representing "all current and former non-exempt employees" at both Defendants Fine & Rare and The Flatiron Room, even though they did not work at the same time and neither of them were employed by The Flatiron Room (or Defendant Goodnight Group).  Naymon Dec. ¶ 29.  Plaintiffs' attempt to argue (Plaintiffs' MOL, at p. 12). that their "allegations in the Complaint and Plaintiffs' Declaration are sufficient to make a modest factual showing to support conditional certification," is flawed.  As set forth above, Plaintiffs can ordinarily satisfy this burden by showing that there are other employees who are similarly situated with respect to their job requirements and pay provisions. *Myers*, 624 F.3d at 555.  Plaintiffs, however, submit only their own self-serving declarations in an attempt to establish the requisite factual nexus which binds them to the potential members of the collective and fail to include any affidavits from any of the other employees, even ones who are named in Plaintiffs' declarations.  As such, Plaintiffs fail to demonstrate that they are similarly situated to the proposed collective for which they seek certification, and the required factual nexus is therefore absent.

First, the all-encompassing boilerplate collective, including all "non-exempt employees (including but not limited to delivery persons, waiters, bartenders, barbacks, runners, bussers, cooks, food preparers, dishwashers, porters or hosts)" proposed by Plaintiffs is completely overbroad. The Goodnight Group LLC does not even employ delivery persons; and cooks, dishwashers, porters, and hosts *are not even paid with a tip credit*. Naymon Dec. ¶¶ 17-21.

With respect to the tipped employees – servers, bartenders, barbacks, runners and bussers – the procedure for calculating the tip portion of their wages differs by category of employee. *Id.* at ¶¶ 11-12.  Plaintiff Guevara alleges she was a busser and Plaintiff Heras alleges she was a food runner. *See* Plaintiff Guevara Dec. ¶ 1; Plaintiff Heras Dec. ¶ 1. Runners and bussers, along with barbacks, are the only categories of employees who are even arguably similarly situated in that the tip portion of their wages are calculated using a similar formula. Naymon Dec. ¶ 12.  Moreover, both Plaintiffs worked solely at Fine & Rare. *Id.* at ¶ 29.  The calculation of tips for runners, bussers and barbacks at The Flatiron Room was controlled by a different manager than that of those employees at Fine & Rare.  *Id.* at ¶ 9.  These plaintiffs have failed to establish any factual nexus whatsoever between themselves and any employee outside of the other runners, bussers and barbacks at Fine & Rare, only. *See Lijun Geng v. Shu Han Ju Rest. II Corp*., 2019 U.S. Dist. LEXIS 154246, at *39 (S.D.N.Y. Sept. 6, 2019) ("Consistent with its 'discretion to certify a different group of individuals than that sought by' Plaintiffs, the Court does not recommend extending the conditionally certified collective to include all non-managerial employees of Defendants."). Even with respect to runners, bussers and barbacks, Plaintiffs have failed to put forth the requisite factual support to meet even the low burden necessary for conditional certification under the FLSA.  *See, e.g., Mata v. Foodbridge LLC*, No. 14 CIV. 8754 ER, 2015 U.S. Dist. LEXIS 70550, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) (denying conditional certification where Plaintiff's affidavit

"include[d] no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions"); *see also Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010) (denying conditional certification due to lack of factual allegations showing other employees similarly situated); *see also Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 SJ MDG, 2014 U.S. Dist. LEXIS 53813, at *3-4 (E.D.N.Y. Apr. 17, 2014) (denying conditional certification where "Plaintiffs make only general allegations that other employees of defendants were denied minimum wage and overtime compensation.").

With respect to these employees – the runners, bussers and barbacks – each employee's collection of tips depended entirely on their schedule, and Plaintiffs' motion is completely silent as to the effects of scheduling on the employees' tips.  For example, if a busser works on a Monday when the restaurant is slow, the tip pool will be lower.  Naymon Dec. ¶ 14.  It follows that if a barback works on a Friday night when the restaurant is busy, the tip pool will be higher.  *Id.*  The same logic applies to the slow season versus the busy season, as well as to regular weekends versus holiday weekends.  *Id.* Additionally, Plaintiff Heras was employed from June 2017 to August 2019.  Plaintiff Guevara was employed from the November 2019 to February 2020.  *These employees did not even overlap* and Plaintiffs' motion fails to consider changes in volume of business during those years.  In any event, given that they worked in different time periods, damages calculations, if any, will be unique for each of the two Plaintiffs should this Court certify the collective.  The purpose of the collective action is not served by certifying a class with so much variety as here.

Plaintiffs erroneously rely on inapplicable string cites in their motion in an attempt to support their argument regarding the low threshold for conditional certification. *See* Plaintiffs' MOL, at 12.  An examination of Plaintiffs' cases reveals that, in fact, the employees within the

collective Plaintiffs attempt to certify, here, are not similarly situated and thus not eligible for certification. For example, Plaintiffs cite *Khalil v. Original Homestead Rest., Inc.*, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007), as an example of a case in which certification was granted based upon the complaint and one affidavit. However, the collective that was certified in *Khalil* was *compromised entirely of waiters*, not the diverse group of covered employees targeted in the instant motion. Similarly, in *Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, at *8 (S.D.N.Y. Apr. 24, 2006), also cited by Plaintiffs, the collective that was certified was exclusively current and former parking attendants. Again, this is easily distinguishable from the collective Plaintiffs here seek to certify, as is *Jason v. Falcon Data Com, Inc.*, 2011 U.S. Dist. LEXIS 77352, at *1 (E.D.N.Y. July 18, 2011), also cited by Plaintiffs, in which the proposed collective was comprised *exclusively of cable technicians*; *Lixin Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001), in which the proposed collective was comprised *exclusively of servers*; and *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, 2012 U.S. Dist. LEXIS 76660, at *2 (S.D.N.Y. June 1, 2012), in which the proposed collective was comprised *exclusively of employees "in any tipped position."* All of the collectives in the cases relied on by Plaintiffs were certified *because there was only one category of employee*. Accordingly, Plaintiffs' case law does not support its attempt to certify such a large and diverse class as here.

### A. Plaintiffs' Declarations are Self-Serving and Insufficient to Provide the Necessary Factual Nexus.

Notably, Plaintiffs fail to include affidavits from any other current or former employees of any of the Defendants; their own declarations are the only evidence put forth to support their argument that the employees are similarly situated for certification. Indeed, Plaintiffs' declarations list a number of employees with whom Plaintiffs have allegedly spoken regarding their improperly paid wages. *See* Plaintiff Guevara Dec. ¶ 5; *see* Plaintiff Heras Dec. ¶ 5.

However, these lists are woefully inadequate for Plaintiffs to rely upon in order to prevail on this motion and, tellingly, none of these employees elected to join in Plaintiffs' purported class action. Furthermore, no delivery person, barback, cook or porter is identified, and, in any event, Defendants do not employ delivery persons.  Naymon Dec. ¶ 21.

Plaintiffs' failure to connect with the other categories of employees – barbacks, cooks and porters – is telling on a number of levels, particularly given the outreach Plaintiffs' counsel has engaged in via LinkedIn and other means of contact, to attempt to solicit additional employees to join this action, to no avail.  *Id.* at ¶ 33.

Second, cooks and porters are not paid tipped wages, *see* Naymon Dec. ¶¶ 16-18, so it is not surprising that Plaintiffs were unable to find any cooks or porters who had complained about the allegedly illegal tip pooling procedures.

Third, even with respect to the individuals "named" in the declarations (*see* Plaintiff Guevara Dec. ¶ 5; Plaintiff Heras Dec. ¶ 5) – and it is noteworthy that of the nine individuals, a last name is included for only one – the allegations are incredibly nonspecific, from the absence of any wage information right down to the fact that it is not even clear to which employee Plaintiffs are referring.  For example, according to Ms. Daymon, there are multiple employees by the name of Jose, and Ms. Naymon, who considers herself generally familiar with all of the Company's employees, is unfamiliar with "El Colombiano." Naymon Dec. ¶ 28.

However, perhaps the biggest issue with Plaintiffs' request for conditional certification is that even among the tipped employees working for Defendants, the pay structures are completely different; Plaintiffs Guevara and Heras were admittedly employed as a busser and a food runner, respectively (*see* Plaintiff Guevara Dec. ¶ 1; Plaintiff Heras Dec. ¶ 1).  Plaintiff Heras alleges that for her work as a food runner she was "paid tip credit minimum wage at a rate of ten dollars

($10.00) per hour by check weekly."  Plaintiff Heras Dec. ¶ 6.  Plaintiff Guevara alleges the same for her work as a busser.  *See* Plaintiff Guevara Dec. ¶ 6.  Without putting forth any supporting detail, both Plaintiffs allege that they were "subject to an illegal tip pooling system that was mandated by management, of which [they] never consented to or agreed to."  Plaintiff Guevara Dec. ¶ 10; *see also* Plaintiff Heras Dec. ¶ 11.  Both Plaintiffs, again without putting forth any supporting detail, allege that all other tipped employees were subject to the same illegal tip pool.  *See id.*  The Plaintiffs fail to put forth any detail about how the tip pool worked and/or whether the tip pool worked the same way for all employees who were paid a tipped wage.  In fact, the tip process worked differently for servers and bartenders than it did for bussers, runners and barbacks. Naymon Dec. ¶¶ 12-13.  As such, while runners, bussers and barbacks received the same percentage of the daily tip pool, servers and bartenders received *an entirely different percentage*. *Id.*  This alone refutes Plaintiffs' allegation that these categories of employees are similarly situated.

Moreover, both Plaintiffs worked at Fine & Rare, as did all of the individuals named in both declarations.  Even assuming, *arguendo*, that Fine & Rare and The Flatiron Room constitute a joint enterprise, which Defendants do not concede as the two restaurants have different General Managers (see Naymon Dec. ¶¶ 1, 4), there is simply no identifiable factual nexus which binds Plaintiffs and the employees who allegedly worked at both locations together as victims of a common policy or scheme.  Furthermore, the two locations have separate tip pools. Naymon Dec. ¶ 7.

### B.  There is No Evidence That Plaintiffs Were Victims of a Common Policy or Scheme Relating to the Meal Credit.

Plaintiffs' allegations regarding meal credit deductions fail on the merits.  Both named Plaintiffs were employed exclusively at Fine & Rare and all payroll and employer records show

Fine & Rare as the employer.  Naymon Dec. ¶ 29.  Ms. Naymon was the General Manager at Fine & Rare.  *Id.* at ¶ 1.  According to Ms. Naymon who has observed and/or participated in literally hundreds of family meals during her tenure at Fine & Rare, it served (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk or juice. *Id.* at ¶ 25.  Ms. Naymon, herself, is a vegetarian and attests that while she personally elected not to participate in the family meal because she preferred to eat off the clock, she would have been able to eat based on the variety of food that was offered.  *Id.* at ¶ 26.  All employees who wished to opt out of the family meal were able to do so.  There was no delay between an employee's request to opt out of the family meal and its reflection on that employee's paystub. *Id.* at ¶ 23.  Plaintiff Heras, herself, opted out of the meal credit deduction. *Id.* at ¶ 24.

Plaintiffs have simply failed to meet their burden.

### C.  There is No Evidence That Plaintiffs Were Victims of a Common Policy or Scheme Relating to Defendants' Overtime Policies.

Plaintiffs' moving papers provide very little detail as to the specifics of their overtime claims, and certainly do not provide any sufficient evidence to conclude that other employees were similarly situated to them.  In fact, Plaintiffs' entire argument seems to be a four-line paragraph (Plaintiffs' MOL at p. 5), which contains no references to any sworn statements about this issue in Plaintiffs' declarations.  It is unclear what, exactly, Plaintiffs' claim is with respect to this issue.  Defendants' overtime policy is proper and consistent with applicable law.  Naymon Dec. ¶ 32.  All non-exempt employees are entitled to 1.5 times their usual wage for all hours worked over 40 per week.  *Id.* Every employee who earns overtime is paid their overtime wage. *Id.* Plaintiffs have put forth no evidence to the contrary.

For the foregoing reasons, collective certification should be denied.

III. **The Court Should Deny Plaintiffs' Request For Information For Individuals With A Cause Of Action Dating Back to July 10, 2014, Because Their Claims Are Outside The Statute Of Limitations And They Cannot Join The Collective**

The statute of limitations for assertion of wage claims under the FLSA is two years from when the cause of action accrued, unless the employer acted willfully, in which case the limitations period is three years from when the cause of action accrued. 29 U.S.C. § 255(a).  The statute of limitations continues to run through the notice and opt-in period; potential plaintiffs must opt-in to the collective action to toll the statute of limitations. *Hoffman v. Sbarro*, 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

Plaintiffs' Motion made requests that are barred by the statute of limitations.  For instance, the Plaintiffs requested (at p. 20) a Microsoft Excel file containing contact information of current and former employees dating back to the six (6) year period prior to the filing of the Complaint.  An individual whose cause of action accrued on July 10, 2014, would have had to bring his claim by July 10, 2017, at the latest.  If the court approves Plaintiffs' request for the Microsoft Excel file, it will result in solicitation of expired claims.

IV. **Equitable Tolling of the Statute of Limitations Is Not Appropriate In This Case**

Plaintiffs also requested (at p. 21) that the applicable FLSA statute of limitations not be tolled until such time that Plaintiffs are able to send notice to potential opt-in plaintiffs.  The statute of limitations for assertion of wage claims under the FLSA is two years unless the employer acted willfully, in which case the limitations period is three years. 29 U.S.C. § 255(a).  Equitable tolling allows courts to extend the statute of limitations to avoid inequitable circumstances. *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).  The doctrine was developed to address situations in which fraudulent or other

conduct concealed the existence of a claim. *See, e.g., Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985).  A litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631, 649 (2010). The plaintiff has the burden of showing that equitable tolling is warranted.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Plaintiffs have not satisfied either of the elements set forth by the Supreme Court to justify equitable tolling.  Plaintiffs have not pointed to any extraordinary circumstances standing in the way of timely filing.  There is no indication that Defendants will interfere with the exercise of any potential plaintiffs' rights under the FLSA during the opt-in period. Plaintiffs have not articulated why a potential class member who acts diligently might nevertheless fall outside the statute of limitations period.  Therefore, the Court should not grant equitable tolling for the opt-in period.

### V.  Plaintiffs' Proposed Notice of Pendency is Improper

As set forth above, Defendants object to the class that Plaintiffs seek to represent. However, in the event that this Court grants even partial conditional certification, Defendants object to Plaintiffs' proposed notice, attached to their MOL as Exhibit A, on several grounds. First, Plaintiffs' counsel should be required to provide precise information regarding their fees and costs.  Specifically, Plaintiffs' counsel should be required to disclose their fee arrangement, including the percentage of any recovery that would be paid as attorneys' fees from any recovery by opt-in plaintiffs beyond what they will seek from the Court as a potential attorneys' fees award.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 324 (S.D.N.Y. 2007)

(holding that final notice must include statement regarding the fee arrangement agreed to by the named plaintiff and his attorneys, because such arrangement could have an impact on any recovery by opt-in plaintiffs).  Plaintiffs' counsel should also specify how costs will be paid. There is no mention in Plaintiffs' Notice of Pendency attached to Plaintiff's MOL as Exhibit A of how costs will be handled in the event of a judgment against Plaintiffs.  In addition, Plaintiffs' counsel does not explain in any detail the costs and expense that may be incurred in the lawsuit, including paper discovery, depositions of named Plaintiffs, the Defendants, and/or opt-in plaintiffs, motion practice, and trial.  The language in the Notice must provide potential opt-in plaintiffs with sufficient information regarding the attorney-client relationship they may be engaging in, and the Notice falls short in that regard.

Second, the proposed Notice directs potential plaintiffs to mail an opt-in form to Plaintiffs' counsel.  The opt-in should instead be mailed to the Clerk of Court.  Requiring potential opt-ins to mail the form to Plaintiffs' counsel discourages potential plaintiffs from retaining their own counsel, which potential plaintiffs should be free to do without undue influence from Plaintiffs' counsel.  *See Lujan v. Cabana Management, Inc.*, 2011 WL 317984, at *13 (E.D.N.Y. Feb. 1, 2011) (reasoning that mailing opt-in forms to plaintiffs' counsel "implicitly discourages opt-in plaintiffs from selecting other counsel," altering notice to direct opt-in plaintiffs to mail forms to the Court) (citations omitted); (collecting cases)..

Third, Plaintiffs' proposed Notice fails to identify and provide contact information for defense counsel, which courts recognize could serve as yet another source of information for notice recipients.  *See, e.g., Guan*, 2016 WL 4257549, at *6; *Slamna v. API Rest. Corp.*, No. 12 Civ. 757, 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).

Fourth, there is no basis for requiring the posting of a notice by Defendants.  Inherently, posting a notice of a collective action is potentially disruptive to Defendants' operations and not justified or outweighed by the interest in reaching intended recipients.  Naymon Dec. ¶ 34. Further, a notice posted in the workplace will reach only current employees, for whom Defendants necessarily maintain accurate address information.  *See Hintergerger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 WL 3464134, at * 13 (W.D.N.Y. Oct. 21, 2009) (refusing plaintiff's request to post notice in workplace because plaintiff made no showing that defendant did not maintain up-to-date contact information for current employees); *Gordon v. Kaleida Health*, Civ. No. 08-cv-378S, 2009 WL 3334784, at *11-12 (W.D.N.Y. Oct. 14, 2009) (same).

Fifth, Plaintiffs' request for information is overly broad.  There has been no showing in this case that mailing notices to the potential class members would be insufficient.  Moreover, disclosing all of the information requested, including telephone numbers and email addresses, is an unjustified intrusion into the privacy of non-parties, including many current employees.  *See Hintergerger*, 2009 WL 3464134, at *11 ("The Court agrees that, in the interest of privacy, [defendants] need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses."); *Gordon*, 2009 WL 3334784, at *9 (same); *see also Arevalo v. D.J.'s Underground, Inc.*, No. DKC 09-3199, 2010 WL 4026112, at *3 (D. Md. Oct. 13, 2010) (denying plaintiffs' motion to compel defendants to produce phone numbers for the putative plaintiffs); *Campbell v. PriceWaterhouse Coopers*, LLP, No. S-06-2376, 2008 WL 2345035, at *3 (E.D. Cal. June 5, 2008) (holding telephone and social security numbers should not be released unless notification of putative plaintiffs by first class mail is insufficient).  Accordingly, the case law is well-settled that e-mail addresses, telephone numbers and social security numbers need not be disclosed. Furthermore, Plaintiffs' request for compensation rates is overbroad as well.  This, too, is an

intrusion into the privacy of non-parties.  Opt-in plaintiffs who wish to participate in the lawsuit will provide to their attorneys the relevant compensation rate at the appropriate time.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiffs' Motion for Certification in its entirety.

Dated: September 14, 2021

GABAY & BOWLER

*/s/   Sari Gabay*
Sari Gabay, Esq.
Anne Marie Bowler, Esq.
48 West 21st Street, Suite 1000
New York, NY 10010
(212) 941-5025
gabay@gabaybowler.com
bowler@gabaybowler.com
*Attorneys for Defendants*